## MILLER v. HORTON.

No. 8166—Opinion Filed June 6, 1917.

Rehearing Denied Feb. 12, 1918.

(170 Pac. 509.)

1. **Pledges—Commercial Paper — Interests of Pledgor and Pledgee.**

The pledging of commercial paper as collateral security for the payment of a debt does not vest the pledgee with complete title; he has only a special interest therein to secure the debt; the general ownership remains in the pledgor.

2. **Same—Right to Sell Paper—Application of Proceeds.**

The pledge of commercial paper as collateral security for payment of debts does not, in the absence of special power for that purpose, authorize the pledgee to sell the securities so pledged, upon default of payment of the debt, either at private or public sale. He must hold and collect the same as it becomes due and apply the proceeds to the payment of the debt secured.

(Syllabus by Pryor, C.)

Error from District Court, Bryan County; Jesse M. Hatchett. Judge.

Action by Mrs. Blanche Horton against Norman Miller. Judgment for plaintiff, and defendant brings error. Affirmed.

J. M. Crook, for plaintiff in error.

McPherson & Cochran and Chas. A. Phillips for defendants in error.

Opinion by PRYOR, C. On the 8th day of October, 1914, the defendant in error; Blanche Horton, commenced an action in the district court of Bryan county against Norman Miller, plaintiff in error, to recover the sum of $190, alleged to be the balance due on a promissory note made by the plaintiff in error to the defendant in error. The parties will be referred to as they appeared in the court below.

The petition of the plaintiff in the court below alleged, in substance: That on the 20th day of September, 1912, the plaintiff and her husband, L. D. Horton, sold to the defendant, Norman Miller, lot 7 in block 134 in the city of Durant, Okla., for the sum of $1,600, and in addition thereto the defendant was to assume a real estate mortgage on the lot at the time. The defendant paid the plaintiff and L. D. Horton $600 in cash and for the deferred payment made and delivered to the plaintiff and L. D. Horton his two promissory notes in the sum of $500 each; one due on the 20th day of September, 1913, and the other due on the 20th day of September, 1914. That the plaintiff retained a vendor's lien on the said lot as security for the payment of the said notes. That the first note was paid by the defendant when the same became due. That during the year 1913 the plaintiff and her husband delivered to the First National Bank of Idabel, Okla., the last note as collateral security for the payment of a certain note in the sum of $435, given to said bank by Warren Phillips and L. D. Horton, and assigned the vendor's lien on said lot to said bank. That the sum of $50 had been paid on said note of Warren Phillips and L. D. Horton which the said First National Bank held. That on the 20th day of September, 1914, there was due and unpaid as principal and interest on the said note given to the plaintiff and L. D. Horton the sum of $880, and while the said bank held said note as collateral security, the defendant went to the First National Bank of Idabel, and paid the note of the said Warren Phillips and L. D. Horton, the sum due thereon at that time being $434.37, and secured from the said First National Bank the said note of Warren Phillips and L. D. Horton, and the note pledged with the said bank as collateral security, the same being the $500 note sued on, and the release of the vendor's lien which the plaintiff and L. D. Horton had delivered to the bank at the time of negotiating the $435 loan. But at the time of taking up the said notes and security by the defendant there was still due on the said $500 note the sum of $160.19 after giving the defendant credit for the $434.37 which he paid to the said First National Bank. That L. D. Horton prior to this suit assigned his interest in said note to plaintiff. The plaintiff asks in her petition judgment for the said $160.19, for the cancellation of the release of the vendor's lien delivered to the First National Bank by said defendant, and for a foreclosure of the vendor's lien.

The answer of the defendant alleges in substance that by reason of his transaction with the First National Bank of Idabel in taking up the said note of one Phillips and L. D. Horton in the sum of $434.37, and the bank delivering the said $500 note of the

defendant to the plaintiff, and the release of the vendor's lien, that the defendant became the absolute owner of the note sued on in this action. He sets up a further defense, and asks damages in the sum of $104 against the plaintiff by reason of certain alleged .fraud which he alleges to have been committed by the plaintiff against him in the original transaction, wherein he alleges the plaintiff represented to him that the lot had a mortgage against it in the sum of $750, bearing a low rate of interest, 6 per cent., which made said purchase a desirable proposition. It further alleges that it did not run the length of time represented by the defendant, and that he was compelled to pay said mortgage off in the year of 1912, and had to borrow the money for that purpose at a higher rate of interest.

When this cause came on for hearing there was a jury duly impaneled, but, after hearing the evidence and argument of counsel, the court directed a verdict for plaintiff and rendered judgment thereon, to which the defendant excepted, and prosecutes his appeal to this court for review.

The defendant urges two assignments of error, which may be briefly stated: First, that the court erred in overruling a motion of the defendant to quash depositions of the plaintiff; second, that the court erred in directing the jury to return a verdict for the plaintiff, which said verdict was contrary to the law and evidence.

The motion of the defendant to quash the depositions of H. C. Morris and Warren Phillips is as follows:

"Comes now the defendant and moves the court to quash the depositions of Warren Phillips and H. C. Morris taken on October 1, 1915, for the reason that they were not taken upon such notice and under procedure as was in such cases provided by law."

The specific complaint made on the hearing of said motion against the deposition was that the notice of taking said depositions did not give the defendant sufficient time to make preparation and attend the taking of the same. The records show that the notice was served on the defendant on the 25th day of September, 1915, by leaving a copy thereof at the residence of the defendant in the city of Durant with the wife of defendant, and by mailing a copy thereof to J. M. Crook, the attorney of record, of the defendant. The records show that the said attorney received this notice on the 25th day of September, 1915, at Oklahoma City. The date fixed in said notice for the taking of said depositions was the 1st day of October, 1915, and the place, the town of Idabel, Okla.

The statute prescribing the notice for the taking of depositions and the manner of service thereof is as follows:

"5079. Prior to the taking of any deposition, unless taken under a special commission, a written notice, specifying the action or proceeding, the name of the court or tribunal in which it is to be used, and the time and place of taking the same, shall be served upon the adverse party, his agent or attorney of record, or left at his usual place of business or residence. The notice shall be served so as to allow the adverse party sufficient time, by the usual route of travel, to attend, and one day for preparation, exclusive of Sunday and the day of service; and the examination may, if so stated in the notice, be adjourned from day to day."

The evidence further shows that the attorney for the plaintiff offered to agree with the attorney for the defendant that the depositions might be taken any time between the 1st and the 4th day of October, or any time that would not delay the trial of said cause, which was set for the 6th day of October, 1915. There seems to be no legal objection whatever to this notice; in fact, it appears that the notice is more liberal than the statute. Therefore the court committed no reversible error in refusing to quash the same upon motion of the defendant.

In regard to the second error urged by the plaintiff that the court erred in directing the verdict, and that the verdict and judgment were contrary to the law and evidence, the defendant urges in his brief two propositions, the alleged fraud of the plaintiff in the purchase of said lot, and that he had discharged said note by the transaction he had with the bank. Upon careful examination of the evidence in the record it appears plainly that there is no evidence to support whatever allegations of fraud the answer contains. The evidence of the defendant in this regard simply shows that the representative of the plaintiff stated to the defendant that there was a mortgage on said lot bearing a low rate of interest, which made the purchase a desirable proposition. As to there being a mortgage on the place bearing a low rate of interest, this was true, and as to whether or not it was a desirable proposition is a mere matter of opinion which does not constitute fraud. Further, the representative of the plaintiff, when negotiating with the defendant to sell him the lots, delivered to him a statement of the mortgage which showed the principal amount, interest paid, and the interest due and the interest to fall due, and the date when the mortgage would become due. This statement is entirely consistent with the representations complained of by defendant,

and alone completely refutes the allegations of the answer as to fraudulent representations as to said mortgage. The defendant himself introduced this statement as to his own evidence. It therefore conclusively appears from the record that no. fraud whatever was established by the evidence of the defendant. The counterclaim of the defendant failed.

The next contention made by the defendant is that, when the defendant took up the note for $434.37 of Warren Phillips and L. D. Horton and the $500 notes sued on in this action and the vendor's lien, the defendant became the absolute owner of said $500 note, and that there was no further liability of the defendant to plaintiff on said note; that said transaction was a complete discharge of said note. This question depends on whether or not, when any evidence of indebtedness, such as a promissory note, is pledged as collateral to secure the payment of the debt, the title passes from the owner of such evidence of indebtedness to the pledgee. The question seems to have been well settled that the mere pleading of a promissory note or other evidence of indebtedness as collateral security for the payment of a debt does not divest the pledgor of title and vest title in the pledgee. Averill Machinery Co. v. Bain, 50 Mont. 512, 148 Pac. 334; Garlick v. James, 12 Johns. (N. Y.) 146, 7 Am. Dec. 294; Trust Co. v. Rigdon, 93 Ill. 458; Halliday v. Bank, 112 Ga. 461, 37 S. E. 721. In the case of Trust Co. v. Rigdon, supra, the Supreme Court of Illinois held:

"On a pledge or pawn of personalty, the legal property does not pass as in the case of a mortgage with a condition of defeasance, but the general ownership remains with the pledgor, and only a special property passes to the pledgee."

In the case of Averill Machinery Co. v. Bain, supra, the court held:

"The legal title to property pledged remains in the pledgor. Legatt v. Palmer, 39 Mont. 302, 102 Pac. 327. The pledgee has a special property interest in the thing pledged; that is, he has a lien upon it which depends for its validity upon possession. Rairden v. Hedrick, 46 Mont. 510, 129 Pac. 498. When the principal debt is paid, the pledge is discharged (31 Cyc. 851), and the pledgor is entitled to a return of the pledge."

As the pledgee does not hold the title to the thing pledged, it follows, as a matter of course, unless he has a contract giving him authority to sell the same, he cannot do so.

When a person or corporation is holding a promissory note, commercial paper, or other evidence of debt as collateral security for the payment of a debt to him, he has only the authority to collect the same and apply it on the debt due him, and he cannot sell said collaterals and pass. title thereto to the pretended purchaser. Joliet Iron Co. v. Scioto Fire Brick Co., 82 Ill. 548, 25 Am. Rep. 341; Wheeler v. Newbould, 16 N. Y. 392; Powell v. Ong, 92 Ill. App. 95; Trust Co. v. Rigdon, 93 Ill. 458. In the case of Union Trust Co. v. Rigdon, 93 Ill. 458, the Supreme Court of Illinois held:

"There is a distinction between a pledge of ordinary chattels and a pledge of commercial paper. A pledge of the latter as collateral security for the payment of a debt does not, in the absence of a special power for that purpose, authorize the pledgee to sell the securities so pledged, upon default of payment, either at public or private sale. He is bound to hold and collect the same as they become due, and apply the net proceeds to the payment of the debt so secured."

In the case of Joliet Iron Co. v. Scioto Fire Brick Co., 82 Ill. 548, 25 Am. Rep. 341, the court said:

"The pledge of commercial paper as collateral security for the payment of a debt does not, in the absence of a special power for that purpose, authorize the party to whom such paper is so pledged to sell the securities so pledged, upon default of payment, either at public or private sale. He is bound to hold and collect the same as it becomes due, and apply the net proceeds to the payment of the debt so secured. A person holding property or securities in pledge occupies the relation of trustee for the owner, and as such, in the absence of special power to do otherwise, is bound to proceed as a prudent owner would with his own. From the very nature of the case, property can only be applied as security through the process of sale. Not so with bonds, mortgages, or promissory notes."

Further, the statute (section 4519, Revised Laws 1910) forbids the sale of evidence of debts by the pledgee; said section being as follows:

"The pledgee cannot sell any evidence of debts pledged to him, except the obligations of governments, states or corporations; but he may collect the same when due."

The evidence of defendant shows that he had knowledge of the nature of the bank's interest in said note. As title to said note did not pass to the First National Bank when the plaintiff deposited the same with it as collateral security, and as the bank under the law had no authority to sell the same, title did not pass to the defendant when he took the same up and procured the possession thereof. He was liable to the defendant for the amount due thereon at

the time of the commencement of the suit, and as the counterclaim of the defendant in the way of damages failed as above shown, all of the defenses of the defendant have failed. The court committed no prejudicial or reversible error in directing a verdict for the plaintiff.

Therefore the judgment of the court below should be affirmed.

By the Court: It is so ordered.