Margaret A. WOLFENBARGER, d/b/a
Shady Sam's Pawn Shop,
Plaintiff-Appellee,

v.

Clancy WILLIAMS, Loy Bean, and the
City of Lawton, Oklahoma,
Defendants,

and

Robert L. Gillian, Dick Tannery, and
Robert Perrine,
Defendants-Appellants.

Nos. 86–2221, 86–2222, 86–2235.

United States Court of Appeals,
Tenth Circuit.

Aug. 3, 1987.

Rehearing Denied in No. 86–2235
Aug. 20, 1987.

Warren H. Crane, Lawton, Okl., for plaintiff-appellee.

David W. Lee, Asst. Atty. Gen. (Michael C. Turpin, Atty. Gen., with him on the brief), Oklahoma City, Okl., for defendants-appellants Dick Tannery and Robert Perrine.

Felix A.D. Cruz, Asst. City Atty. (David M. Curtis, City Atty., with him on the brief), Lawton, Okl., for defendant-appellant Robert L. Gillian.

Before SEYMOUR, and BARRETT, Circuit Judges, and BROWN,[*] District Judge.

BARRETT, Circuit Judge.

This appeal requires us to consider, from a slightly different perspective, the same issues we addressed in *Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986), (hereinafter *Wolfenbarger I*). In that case we held that a pawn shop owner had a constitutionally protected interest in goods pledged to her, though the goods turned out to be stolen. We held that this interest was sufficient to support a claim under 42 U.S.C. § 1983 that she had been deprived of such goods by law enforcement officials without due process of law. We are now called upon to decide whether this rule was, at the time the alleged deprivation occurred, so clearly established that the defendants should have known they were violating the plaintiff's constitutional rights.

The facts are the same as in *Wolfenbarger I* and a complete recitation can be found there. For our purposes, the relevant facts may be summarized as follows. On August 15, 1980, Police Officer Clancy Williams visited Shady Sam's Pawn Shop in Lawton City, Oklahoma, and discovered various items of stereo equipment that had

been reported stolen. Officer Williams placed a "hold" on the items officially requesting Margaret Wolfenbarger, owner and operator of Shady Sam's Pawn Shop, not to sell or otherwise dispose of the equipment because it might be needed as evidence in a criminal investigation and prosecution.

On October 30, 1980, District Attorney Dick Tannery wrote a letter to Lawton City Police Chief Robert Gillian advising him that when police officers discover stolen property in pawn shops, they should "seize the property and place on property receipt in the custody of the police department...." to await a determination of ownership by a magistrate. Gillian promulgated Tannery's letter to all members of the police department. Acting pursuant to the instructions in this letter, and without a warrant, Officers Williams and Loy Bean went to Shady Sam's Pawn Shop, seized the stereo items that had previously been placed on hold, and removed the items to the property vault at the Lawton City Police Station. On November 13, Assistant District Attorney Robert Perrine sent a memorandum to Officer Williams directing him to release the stereo items to Louie Loggins, the true owner of the property. Officer Williams turned the items over to Loggins the following day.

The procedures described in the November 13 memorandum from Perrine and, arguably, the October 30 memorandum from Tannery, deviated from prior police department procedures for the handling of stolen items found in pawn shops and differed from the procedures provided for by Oklahoma statutes. Oklahoma law requires pawn brokers to permit police officers and others to inspect goods in their store that may have been stolen or embezzled. Okla. Stat. tit. 21, § 1092 (1981). Oklahoma law further provides, however, that when police officers come into custody of stolen property, they must deliver the property to a magistrate who, upon satisfactory proof of title of the owner of the property, may order that the property be delivered to the

[*] The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

owner. Okla.Stat. tit. 22, §§ 1321, 1322 (1981).

Wolfenbarger received no notice that Williams would release the property to Loggins and no judicial determination of ownership of the property was made. Wolfenbarger filed a replevin action against Williams in state court immediately after Williams seized the two items. The district court, however, dismissed the action as moot after Williams gave the items to Loggins.

Wolfenbarger then brought suit in federal district court under 42 U.S.C. § 1983 alleging that the defendants had violated her constitutional rights by seizing the property in her shop without a warrant and turning it over to Loggins without a judicial determination of ownership. The district court initially ruled that Wolfenbarger had no constitutionally protected property interest in the stolen items and granted summary judgment in favor of the defendants. We reversed that ruling in *Wolfenbarger I* and remanded the case for further proceedings. On remand, the defendants again moved for summary judgment, this time arguing that they were protected from suit by qualified immunity. The district court denied the defendant's motion, reasoning that since Oklahoma statute required the participation of a magistrate in the return of stolen property to the purported owner, the defendants had acted in violation of clearly established law.

In this appeal, the defendants make three arguments in support of their claim of qualified immunity. First, they urge that Wolfenbarger's property interest was not clearly established. Second, they maintain that the seizure of the stereo items without a warrant did not violate the United States Constitution. Finally, Tannery and Perrine argue that they are entitled to qualified immunity because their memoranda constituted "legal advice."

## I.

■ Qualified immunity is an affirmative defense that must be raised by defendants seeking its protection. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court fashioned an objective test out of the doctrine of qualified immunity and held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Anderson v. Creighton*, —— U.S. ——, ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") As the defendants point out, the Supreme Court has emphasized the importance of granting summary judgment on the basis of qualified immunity in suits against government officials as a means of screening out insubstantial claims and shielding government officials from the costs and burdens of trial and discovery. *Id.* Thus, unless the "essentially legal question" of whether the defendant's conduct violated clearly established law can be resolved affirmatively, the action should be dismissed. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

The defendants argue that the district court should have granted their motion because, at the time the items were seized, it was not clearly established that Wolfenbarger had a protected property interest in the stereo equipment. They note the Court's holding in *Harlow* that the focus must be on the law as it was at the time the action occurred. *Id.* at 818, 102 S.Ct. at 2738. They point out that the state and federal court decisions bearing upon property interests in stolen property were not announced until after Wolfenbarger's stereo had been seized and turned over to Loggins. *See Lavicky v. Burnett*, 758 F.2d 468 (10th Cir.1985), *cert. denied, Moore v. Lavicky*, 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986); *Snethen v. Oklahoma Union of the Farmers Educational and Co-operative Union of America*, 664 P.2d 377 (Okla.1983); *Coleman v. Turpen*, 697

F.2d 1341 (10th Cir.1982). They maintain that while it is now clearly established that Wolfenbarger has a property interest in the stereo items, it was not clearly established at the time.

█ To determine whether Wolfenbarger had a clearly established property interest in the stereo items, we must consider whether "existing rules or understandings" stemming from an independent source such as state law operated to "secure certain benefits" and to "support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971). In *Wolfenbarger I,* we evaluated several Oklahoma cases in reaching our conclusion that Wolfenbarger had a property interest in the stereo items. We now hold that by the weight of those cases, as well as certain Oklahoma statutory provisions in effect at the time of the incident in question, it was *clearly established* that Wolfenbarger had a property interest in the items.

In *Wolfenbarger I,* 774 F.2d at 361–62, we observed that under Oklahoma law a pawn broker does not hold title to property received in pledge, *Miller v. Horton,* 69 Okl. 147, 170 P. 509, 511 (1917), that one cannot transfer better title than one has, *Al's Auto Sales v. Moskowitz,* 203 Okl. 611, 224 P.2d 588, 591 (1950), and that even an honest pawn broker cannot hold stolen property as against the true owner. *Adkisson v. Waitman,* 202 Okl. 309, 213 P.2d 465, 466 (1949). We also noted, however, that in Oklahoma a pawn broker's property interest will support an action for replevin, *Williams v. Williams,* 274 P.2d 359, 362 (Okla.1954); *Cf. Riesinger's Jewelers, Inc. v. Roberson,* 582 P.2d 409, 411 (Okla.App. 1978), that in such an action the question of ownership and right of possession must be decided by a trier of fact, *Henderson v. Lacy,* 347 P.2d 1020, 1021 (Okla.1959), and that possession is prima facie proof of ownership. *Al's Auto Sales,* 224 P.2d at 591. The picture that emerges is consistent with the Oklahoma Supreme Court's holding in *Miller v. Horton,* 170 P.2d at 511, in which the court observed that on a pledge or pawn of personal property, though legal

title does not pass, the pledgee takes a " 'special property interest in the thing pledged.' " (Citations omitted.)

These Oklahoma cases are consistent with the well recognized common law doctrine that a good faith purchaser of stolen goods has superior claim to those goods as against all the world except the true owner. As the court explained in the textbook case of *Anderson v. Gouldberg,* 51 Minn. 294, 53 N.W. 636 (1892), "one who has acquired the possession of property, whether by finding, bailments, or by a mere tort, has a right to retain that possession as against a mere wrong doer who was a stranger to the property." There are ample policy reasons for this rule. According to W. Raushenbush, *Brown on Personal Property,* § 11.11, at 312 (3d ed. 1975), "To allow the defendant, in an action in which his wrongful conduct is in question, to raise doubts as to the plaintiff's title to the property, would raise collateral issues, sharply interfering with the principle point in the case—the defendant's wrongdoing." Furthermore, as the court in *Anderson* explained, "Any other rule would lead to an endless series of unlawful seizures and reprisals in every case where property had once passed out of possession of the rightful owner." 53 N.W. at 638.

This common law principle is so well established that it should have come as no surprise that, in 1983, the Oklahoma Supreme Court noted, as a general rule of law, that a good faith purchaser under a defective title has "lawful possession against all the rest of the world" except the true owner. *Snethen v. Oklahoma Union of the Farmers Educational and Cooperative Union of America,* 664 P.2d at 381.

Thus it is clear, as these Oklahoma cases recognize, that pawn brokers and other good faith purchasers of stolen property have a variety of protected interests including, but not necessarily limited to, the right to possess, replevy, and prove ownership of the goods. The fact that they do not have title to the goods does not extinguish these rights. As the Supreme Court observed in *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct.

1983, 1997, 32 L.Ed.2d 556 (1971), "the Fourteenth Amendment's protection of 'property,' . . . has never been interpreted to safeguard only rights of undisputed ownership." The procedural protections of the fourteenth amendment are invoked whenever "a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." (Footnote omitted.) *Id.* at 87, 92 S.Ct. at 1997.

In addition to the case law, the Oklahoma legislature has, at least implicitly, recognized the existence of competing property interests in stolen goods and protected those interests by enacting procedures governing the return of such property to the true owners and requiring a magistrate to hold proceedings to determine "satisfactory proof of title." Okla.Stat. tit. 22, §§ 1321, 1322. We agree with the defendants that violations of clear state regulations do not necessarily rise to the level of a constitutional violation for the purpose of overcoming qualified immunity. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Nonetheless, state law is sometimes decisive on the issue of constitutional violations since it "may bear upon a claim under the Due Process Clause when the property interests protected by the Fourteenth Amendment are created by state law." *Id.* at 193, n. 11, 104 S.Ct. at 3018, n. 11. Here, as we noted in *Wolfenbarger I,* 774 F.2d at 362, the Oklahoma procedural statutes demonstrate "that the holder of stolen property has some protected interest because the state has provided for a judicial determination of ownership or possession prior to release of seized property."

Other Oklahoma statutes likewise establish that pawnbrokers have a property interest in merchandise pledged to them. Oklahoma law defines a "pawn transaction" as the act of lending money on the security of pledged goods or the act of purchasing personal property on the condition that it may be redeemed or repurchased by the seller for a fixed price within a stated period of time. Okla.Stat. tit. 59, § 1502(6) (Supp.1987). Oklahoma law recognizes that a pawnbroker's "only recourse is in the goods themselves" and declares that if pledged goods are not redeemed within thirty days following the last fixed maturity date, the goods may be regarded as forfeited and "become the property of the pawnbroker." Okla.Stat. tit. 59, § 1511(B) (1987). Such a lien or secured interest in collateral, created by contract and secured by state law, has long been recognized as a property right entitled to constitutional due process protection. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 594, 55 S.Ct. 854, 865, 79 L.Ed.2d 1593 (1935). *See also Young v. J.A. Young Machine & Supply Co.,* 203 Okl. 595, 224 P.2d 971 (1950) (a lien is a property right); *Williamson v. Winningham,* 199 Okla. 393, 186 P.2d 644 (1947) (a lien is a qualified right and proprietary interest).

These Oklahoma cases and statutes, in effect at the time of the incidents in question, clearly establish that pawn brokers and other good faith purchasers of stolen goods have substantive and procedural rights in such property. It is likewise clear that these rights are, as described by the Supreme Court in *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, benefits and entitlements secured by existing rules and understandings. Under the circumstances, we hold that the defendants should have known that the law did not permit them to simply remove the stereo items from Wolfenbarger's shop and present them to Loggins without affording Wolfenbarger adequate due process.

## II.

Wolfenbarger also contends that the defendants violated her constitutional rights by seizing the stereo equipment without a search warrant. The defendants argue, and Wolfenbarger concedes, that the police officers were in a place they had a right to be, that they had probable cause to believe that the stereo items were stolen, and that the items were in plain view. Defendants urge that the seizure of the stereo items thus satisfies the "plain view" exception to the warrant requirement. It appears that the district court agreed with the defend-

ants. The court seemed to find it inconsistent, "in view of plaintiff's admission" that there was probable cause, for the plaintiff to argue that the officers should have had a warrant before seizing the stereo equipment.[1]

Though the plaintiff's argument is not especially well presented, her position is not inconsistent. The fact that there is probable cause does not, by itself, relieve police officers of the need to obtain a warrant. Rather, proof of probable cause must be presented to a neutral and detached magistrate in order to secure a warrant. Only in certain circumstances, not present here, are officers with probable cause justified in proceeding with a warrantless search and seizure.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 446, 91 S.Ct. 2022, 2027, 29 L.Ed.2d 564 (1971), a plurality of the Supreme Court held that to satisfy the requirements of the plain view exception to the warrant requirement, an officer must have justification for the intrusion and must discover the items he is searching for through inadvertence. "But where the discovery is anticipated," observed Justice Stewart writing for the court, "where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different." Justice Stewart explained that in such a situation, "the requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as '*per se* unreasonable' in the absence of 'exigent

circumstances.'" *Id.* at 470–71, 91 S.Ct. at 2040–41 (emphasis in original).

It is true, as the defendants point out, that only four of the Justices joined that part of the *Coolidge* opinion in which Justice Stewart held that inadvertence was an element of the plain view exception. Four other Justices dissented and Justice Harlan's concurrence did not extend to the inadvertence issue. It does not follow, however, as the defendants urge, that the law regarding the inadvertence element of the plain view exception is not clearly established. This circuit, like several others,[2] has adopted the rule enunciated by Justice Stewart making inadvertence a requisite element of the plain view exception. In *United States v. Welsch*, 446 F.2d 220, 223 (10th Cir.1971), we cited language in *Coleman* concurred in by a majority of justices and held that where police had "preexisting knowledge of the identity and location of an item sufficiently in advance of the seizure to permit the warrant to be applied for and issued....", a warrant must be obtained. In *Martinez v. Turner*, 461 F.2d 261, 265 (10th Cir.1972), we cited the plurality opinion in *Coolidge* and held that, where police officers knew of the existence of an item of evidence and were specifically seeking that item, "It cannot be said that its discovery was inadvertent and the plain view doctrine cannot apply." *See also Lavicky v. Burnett*, 758 F.2d 468 (10th Cir. 1985); *United States v. Tolerton*, 669 F.2d 652 (10th Cir.1982), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 473 (1982); *United States v. Hampton*, 633 F.2d 927

---

1. The court's finding that the seizure was not unconstitutional did not operate to dismiss defendants Tannery, Perrine, or Williams since the court found that law regarding Wolfenbarger's property interest was clearly established and, hence, they were not immune from suit for returning the property to Loggins.

   The court's finding on the warrant issue did, however, result in the dismissal of officer Bean. The court noted that Bean was defendant Williams' supervising officer and that he "at most approved the seizure of the property," but not its subsequent release and, thus, that there was no "affirmative link" between Bean's actions and the deprivation of constitutional rights suffered by the plaintiff. *Kite v. Kelley*,

546 F.2d 334, 337 (10th Cir.1976). Yet, since we hold here that the defendants should have obtained a warrant, supervising officer Bean clearly seems to be affirmatively linked with one of the claimed deprivations. The plaintiff, however, does not appeal the district court's dismissal of officer Bean.

2. *See, e.g. United States v. Cushnie*, 488 F.2d 81 (5th Cir.1973), *cert. denied*, 419 U.S. 968, 95 S.Ct. 233, 42 L.Ed.2d 184 (1974); *see, e.g., United States v. Santana*, 485 F.2d 365, (2nd Cir.1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *United States v. Gray*, 484 F.2d 352 (6th Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974).

(10th Cir.1980), *cert. denied,* 449 U.S. 1128, 101 S.Ct. 950, 67 L.Ed.2d 116 (1981).

■ In this case, the police officers returned to Shady Sam's Pawn Shop several weeks after they had first discovered the stereo items. They knew the items would still be there because they had placed a hold on them. Acting on the instructions of the district attorney, and without a warrant, they seized the items and removed them from the pawn shop. Under the circumstances, they can hardly claim that their rediscovery of the items was inadvertent or that they did not have time to obtain a warrant. In such a situation, the defendants were not entitled to rely upon the plain view exception and they should have known that clearly established law did not sanction such activity.

Nor do we agree with the defendants alternative argument that the Court's statement in *Coolidge,* 403 U.S. at 472, 91 S.Ct. at 2041, that "this is not a case involving contraband or stolen goods or objects dangerous in themselves...." (footnote omitted) renders the inadvertence rule unclear as it applies to this case.[3] Read in context, the gist of the plurality holding is that a warrant must be obtained for any planned search and seizure unless there are exigent circumstances, as are usually present where contraband, stolen property or dangerous objects are involved.

■ Though stolen goods are involved in our case, they create no exigent circumstances. A hold on the goods had been issued by the police and honored by the pawn shop. There was no danger that the goods would disappear or be damaged and the goods themselves posed no danger to anyone. Furthermore, the stereo items were in the possession not of the thief but of a good faith pledgee. Unlike a criminal in possession of contraband or stolen goods, Wolfenbarger had, as we noted above, a possessory right and property in-

terest in the goods. Finally, there was no urgent need to seize the goods. Indeed, it is unclear what purpose the seizure served other than facilitating an informal replevin action for Mr. Loggins without the benefit of judicial proceedings. There is no indication that the stereo equipment was needed or used as evidence in a criminal case.

Though some courts have recognized exceptions to the inadvertence requirement of the plain view doctrine in cases involving contraband, *see* 2 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 4.11 at 183, n. 68 (1st ed. 1978 & Supp.1986) (and cases cited therein), no court has recognized an exception for stolen goods under circumstances such as those present here. Nor has this circuit recognized any exceptions to the inadvertence requirement. Indeed, in a decision issued after the events in this case, we invalidated an Oklahoma deputy sheriff's seizure of stolen truck parts because he lacked a warrant and did not satisfy the inadvertence requirement in *Coolidge. Lavicky,* 758 F.2d at 475.

Even if the language in *Coolidge* is ambiguous in the context of this case, the Supreme Court has repeatedly expressed a strong preference for searches and seizures made pursuant to a warrant where there is a "doubtful or marginal case [of probable cause]....", *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), or where there are no exceptional circumstances. *Chapman v. United States,* 365 U.S. 610, 614–17, 81 S.Ct. 776, 780, 5 L.Ed.2d 828 (1961); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Where there is no exigent circumstance, there is little excuse for testing the limits of the fourth amendment on the theory that, arguably, the law is not clearly established. We hold that under the circumstances of this case,

**3.** The defendants did not raise an argument regarding this language in *Coolidge* in the district court or in their appellate brief. Rather, they raised the argument for the first time in supplemental briefs filed, with leave from this court, four weeks after oral argument. If the

defendants were, at the time of the seizure in 1980, proceeding in good faith reliance on the notion that this language in *Coolidge* established an exception to the inadvertence requirement, it is difficult to understand why they did not raise the argument before now.

the defendants should have known that a warrant was required.[4]

## III.

■ Defendants Tannery and Perrine contend, as their third basis for qualified immunity, that they cannot be sued for directing the police to seize stolen property and turn it over to the true owner because in doing so they were giving legal advice to the police officers. It is not entirely clear from the record, despite the fact that it contains excerpts from the city charter for the City of Lawton dealing with policy making procedures, whether the instructions given by the district attorney and his assistant to Chief Gillian were merely "legal advice" or whether such instructions amounted to policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, ——, 106 S.Ct. 1292, 1301, 89 L.Ed.2d 452 (1986). Even assuming, arguendo, that the instructions were legal advice, the rule in this circuit is that a prosecutor is entitled to only qualified immunity for giving such advice to police officers. *See Lavicky v. Burnett*, 758 F.2d at 476; *Benavidez v. Gunnell*, 722 F.2d 615, 617 (10th Cir.1983); *Coleman v. Turpen*, 697 F.2d 1341, 1346 (10th Cir.1982). The defendants invite us to abandon this rule in favor of the approach followed by the Seventh Circuit which holds that prosecutors are absolutely immune for legal advice given to police officers. *See Henderson v. Lopez*, 790 F.2d 44 (7th Cir.1986). One panel of this court cannot overrule a prior panel decision; same can only be accomplished by *en banc* consideration.

■ Defendant Tannery raises one last objection to the plaintiff's allegations. He argues that he did not participate in and was not responsible for returning the stereo equipment to Loggins and, therefore, that he cannot be held liable under § 1983 for such action. He maintains that he did not establish any unconstitutional "policy" and urges, instead, that the letter of October 30, 1980, merely stated that stolen property seized by the police should be held until the magistrate determined appropriate disposition of the property.

This argument is raised for the first time on appeal. Tannery and Perrine moved the district court below for summary judgment on the grounds of qualified immunity. They did not argue to the district court that the allegations as to Tannery failed to state a claim upon which relief could be granted. Though we are not obliged to consider this argument here since it was not made to the trial court, *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148 (10th Cir. 1985); *Denton v. Ricketts*, 728 F.2d 489 (10th Cir.1984), we conclude, for the reasons that follow, that the contention lacks merit.

Though Perrine rather than Tannery signed the memorandum of November 13 directing Officer Williams to release the stereo items, it is unclear from the pre-trial record whether Tannery authorized, condoned or acquiesced in the issuance of the memorandum. This is the same reasoning the district court relied upon in refusing to grant Chief Gillian's motion for summary judgment based on the similar argument that he did not participate in the actual deprivation.[5] We find it compelling in regard to Gillian and it is equally persuasive in regard to Tannery.

Further, it is unclear from the record whether Tannery, by issuing his October 30

---

4. We hold here simply that, as a matter of clearly established law, the seizure of the stereo items required a warrant. Though we refer to the defendants collectively, the question of whether all or only some of the defendants were responsible for this deprivation and the extent of their responsibility is one that must be resolved in the district court.

5. Motions for summary judgment were filed by District Attorney Tannery, Assistant District Attorney Perrine, Police Chief Gillian, Officers Williams and Loy, and the City of Lawton on the grounds of qualified immunity. The City of Lawton and Police Chief Gillian also moved for summary judgment on the grounds that Tannery's memorandum was not facially unconstitutional and that it was never adopted as the official policy of the city. Gillian also argued that he was protected by qualified immunity. The district court denied their motion. Gillian's appeal is consolidated with Tannery's and Perrine's, and he adopts their arguments on appeal. The City of Lawton is not part of this appeal.

memorandum directing police officers to seize stolen goods found in pawn shops, authorized, condoned or acquiesced in the violation of the plaintiff's constitutional rights to freedom from unwarranted search and seizure. We conclude that the district court acted correctly in refusing to grant summary judgment in favor of Tannery.

AFFIRMED.