**Howard Ray SMITH, Plaintiff,**

v.

**John WALSH, Sheriff Cleveland County, Oklahoma, Michael J. Followwill, Cliff Winkler, Kevin Austin, Dennis Siddles, Jay Denly, Johnnie Oberlechner, John's Trucking, Inc., an Oklahoma corporation, Professional Towers, Inc., d/b/a L & A Wrecker Service, the Board of County Commissioners of Cleveland County, Oklahoma, Defendants.**

No. CIV–92–1521–A.

United States District Court,
W.D. Oklahoma.

Sept. 29, 1993.

---

("Followwill") and John's Trucking, Inc. ("John's Trucking"). *See* Fed.R.Civ.P. 56. Plaintiff Howard Ray Smith ("Smith") has responded in opposition to both motions. For the reasons stated herein, the Court finds that the Motions For Summary Judgment should be GRANTED with respect to all defendants.[1]

## STATEMENT OF UNDISPUTED FACTS

Whether there are undisputed facts, depends upon whether "there are genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The undisputed facts are as follows.

In September 1991, plaintiff Smith and defendant Followwill entered into a lease-purchase agreement for a 1967 Hobbs trailer. This agreement was accompanied by a hauling contract which required Smith to perform hauling services for Followwill as payment for the trailer. On March 5, 1992, the trailer was involved in an accident, as a result of which the vehicle sustained some damage. At the time, there was some question whether the vehicle was insured and who had the responsibility for providing insurance. On March 9, 1992, Followwill notified Smith of his intention to rescind their agreement. That afternoon, Smith took the trailer from Followwill's place of business, John's Trucking, where it had been parked awaiting inspection by an insurance agent. Followwill then filed a report with the McClain County Sheriff's Department claiming that the trailer had been stolen and indicating that Smith might be responsible.

Later that evening, Deputy Sheriff Austin was summoned to the Country Boy IGA parking lot in Norman, Oklahoma. The parking lot was adjacent to where the trailer was being stored by Smith in a fenced compound. Austin met Followwill at the scene, where Followwill identified the trailer as the one he had reported stolen earlier that day and produced a facially valid title for the

Joseph E. McKimmey, Shawnee, OK, for plaintiff.

Jamie J. McGraw, Dist. Atty.'s Office, Norman, OK, Tom A. Lucas, Lucas Law Office, Norman, OK, William S. Flanagan, Dist. Atty.'s Office, El Reno, OK, for defendants John Walsh, Cliff Winkler, Kevin Austin and Cleveland County Bd. of County Com'rs.

R. Pope Van Cleef, Jr., Bush & Underwood, Oklahoma City, OK, for defendants Michael J. Followwill and John's Trucking Inc.

Jamie J. McGraw, Dist. Atty.'s Office, Norman, OK, for defendant Cleveland County Treasurer.

### ORDER

ALLEY, District Judge.

Pending before the Court are two Motions For Summary Judgment, one from defendants, John Walsh, Sheriff Of Cleveland County ("the Sheriff"), Cliff Winkler ("Winkler"), Kevin Austin ("Austin") and The Board Of County Commissioners Of Cleveland County, Oklahoma ("the County") and the other from defendants, Michael J. Followwill

---

1. Defendants Professional Towers, Johnnie Oberlechner, Jay Denly and Dennis Siddles were dismissed with prejudice by stipulation on March 12, 1993.

vehicle. Austin verified the reported theft through the National Crime Information Computer (NCIC) and called for Deputy Sheriff Winkler, who arrived soon after. Smith drove up to the scene while Winkler, Austin and Followwill were at the parking lot. Austin and Walker briefly detained Smith and retrieved a pocket knife from his clothing during their search. Smith produced the purchase agreement with Followwill and told the deputies that he was storing the trailer with the permission of the lot owner, Dan Hopson.

Winkler then contacted Hopson and obtained permission to enter the premises and recover the trailer. Winkler decided that, because of the dispute over the ownership of the vehicle and the NCIC confirmation of the theft, the trailer should be impounded pending legal adjudication, rather than given to either Followwill or Smith. In order to impound the vehicle, Austin contacted L & A Wrecker Services ("L & A"). L & A arrived and, due to the damage sustained by the trailer, were forced to heat the grease on the fifth wheel and choke in order to free the king pin and remove the trailer from the truck cab.

Smith subsequently brought an action in small claims court in McClain County, Oklahoma, SC–92–61, to recover possession of the trailer. On March 31, 1992, at the proceeding, Smith was awarded title and possession of the vehicle, as well as $1,170.79 for services performed. Followwill was given a judgment lien of $1,000 and was ordered to maintain insurance on the truck through John's Trucking. On August 11, 1992, plaintiff commenced this action against defendants under 42 U.S.C. § 1983, alleging various violations of his Fourth and Fourteenth Amendments rights. Plaintiff claimed that, at Hopson's lot, he had been unlawfully "arrested"; and that the trailer was unlawfully seized by Austin and Winkler without a warrant, that the seizure was under color of law and pursuant to the policies, customs and procedures of the Cleveland County Sheriff's Office, that the seizure violated his Fourteenth Amendment due process property right and that Followwill should be held liable under § 1983 as a state actor.

## SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of· law." Fed. R.Civ.P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. · If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### A. Defendants Winkler and Austin

Smith alleges two bases for holding defendants Winkler and Austin liable under § 1983: first, that they unconstitutionally arrested and searched him and, second, that they seized his trailer without a proper warrant. Therefore, the Court's first examination must be whether constitutional violations are involved here. Based upon the undisputed facts, the Court cannot say that constitutional violations occurred. Also, plaintiff cites no clearly established law that law enforcement officers may not conduct a brief detention or seize property without a warrant under the particular circumstances of this case. While law enforcement officers do not have carte blanche to do what they please, nothing the plaintiff seeks to prove is *per se* unconstitutional.

In any event, Winkler and Austin have asserted the defense of qualified immunity, claiming that their actions were in good faith and "objectively reasonable" under the circumstances. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Immunity questions should be resolved "at the earliest possible stages of litigation." *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Claims of qualified immunity are evaluated against an objective test. "When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). The plaintiff bears the burden of convincing the court that the law was "clearly established" at the time of the alleged violation. *Id.* A plaintiff must do more than assert a generalized violation of a right. Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). If the plaintiff fails to meet this burden, the court "must prevent the plaintiff from subjecting government officials to trial." *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990). *See also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Finally, in cases where reasonable mistakes in judgment are made that may violate established rights, qualified immunity will still protect law enforcement officials from liability. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. Reasonableness is evaluated based upon the facts known to the official at the time of the acts in controversy. *See Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986).

Plaintiff asserts that, while he was at the parking lot, he was illegally searched and detained by Austin and Winkler. In support of his claim, he refers to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which sets forth the standards for reviewing Fourth Amendment search and seizure violations. *Terry* requires that police conduct be judged on the basis of specific objective facts that create the reason for detention. *Id.* at 21, 88 S.Ct. at 1879. Thus, the rights that form the basis of plaintiff's claim, his rights under *Terry,* were clearly established at the time of the incident.

On the basis of uncontroverted facts, however, there appeared to be at least a reasonable suspicion, if not more, that Smith was the person who had allegedly stolen the trailer.[2] Indeed, at the time Smith first approached Walker and Austin, Followwill already had identified the trailer, had shown the officers a valid title to the trailer, the NCIC had confirmed the stolen property report and Followwill had identified Smith as the likely thief. This was not a circumstance where Smith was a randomly selected motorist or passerby on the street. Smith arrived at the exact location where the trailer was parked; and, at the time of his arrival, a stop and frisk to ascertain whether Smith was a threat was reasonable, given the information known to the officers. Indeed, by his own admission, Smith did not divulge his interest in the trailer until after he had been detained by officers. Until that time, Austin and Walker had no information that would contradict their impression that Smith was a suspect. Inasmuch as any action was required by the officers when Smith arrived, there were sufficient facts to support their actions. Walker and Austin were objectively reasonable in doing a brief investigatory and safety detention of Smith and, therefore, they are entitled to the protection of qualified immunity with respect to Smith's detention claim. *See Dixon v. Richer,* 922 F.2d 1456 (10th Cir.1991) (questions of qualified immunity under § 1983 involving Fourth Amendment search and seizure violations are

---

2. Winkler and Austin also state that their decision to detain Smith was based in part on their observation that he appeared to be intoxicated and hostile when he arrived. However, this conclusion is in dispute since Smith denies that he was intoxicated. Consequently, the Court does not consider plaintiff's demeanor in assessing the reasonableness of defendants' actions.

answered by the "objective reasonableness" inquiry of *Terry* ).

▮ Smith's second allegation is that the trailer was seized from Hopson's lot without a warrant.[3] Smith claims that Austin and Walker gained access to Hopson's lot without a warrant and then seized the trailer after he had already made known his interest in it. Walker and Austin justify their seizure on the basis of a "plain view" search and exigent circumstances. They claim that they asked for and received permission from Hopson to remove the trailer from the lot.[4] Moreover, they assert that, because the property was reported stolen by the NCIC, they were under a duty to act since rightful possession of the property was in dispute.

To start, the Court notes that a situation to be avoided if possible is one in which, in retrospect, a law enforcement defendant is potentially a § 1983 defendant no matter which path he chose. No doubt, had Winkler and Austin awarded the truck to Smith, Followwill could have sued the deputies. Had the deputies awarded possession to Followwill, Smith would probably be in court, as he is now. Leaving the trailer where it was parked would have been tantamount to giving the vehicle to Smith, thus Followwill could have sued Austin and Walker for their inaction. Such a circumstance leaves law enforcement officials little room to maneuver.

The United States Supreme Court recently reaffirmed that seizures of property are protected by the Fourth Amendment even if there has been no search within the meaning of the Amendment. *Soldal v. Cook County,* — U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). "A 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Id.* at ——, 113 S.Ct. at 543 (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). Plaintiff asserts his Fourth Amendment rights were violated when Winkler and Austin entered Hopson's lot and seized the trailer to impound it. Plaintiff relies on both *Soldal* and *Wolfenbarger v. Williams,* 826 F.2d 930 (10th Cir.1987), as standing for the illegality of "plain view" seizures in the face of clear possessory interest and absent exigent circumstances.[5]

▮ As an initial matter, it bears noting that the Supreme Court has eliminated the requirement of inadvertence from "plain view" searches and seizures that was a key part of the *Wolfenbarger* holding. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). If law enforcement officers have the lawful right to view an object and know what they want to seize, nothing blanketly prohibits them from seizing the item without a warrant.[6] "The sei-

3. For purposes of the Court's analysis, we assume *arguendo* that Smith has standing to assert this claim. There is some question regarding the exact arrangement Smith had with Hopson which allowed Smith to keep the trailer at Hopson's lot. Nevertheless, because Smith has asserted an interest in the trailer from the beginning of the controversy, the Court will assume that he had permission to keep the vehicle parked at the lot. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (defendants had no standing to challenge alleged Fourth Amendment violations in the absence of showing any interest in the property which was either the location or subject of the search or a reasonable expectation of privacy in the location).

4. Plaintiff attempts to dispute the voluntariness of Hopson's consent to entry into the compound by producing an unsigned affidavit by Hopson, accompanied by a signed affidavit by plaintiff's counsel. Such hearsay information cannot be accepted by the Court, particularly when the representation of counsel in his statement is that

Hopson would not sign the affidavit. Plaintiff's hope of obtaining a signed affidavit have been diminished by the fact that Mr. Hopson's death on September 18, 1993 has been reported. Defendants' claim of entry by voluntary consent of Mr. Hopson is not genuinely in dispute.

5. Although not cited by the plaintiff, the Tenth Circuit recently held that a warrantless "plain view" seizure violated a pawnshop owner's Fourth Amendment interest in a ring that was previously identified by law enforcement officials as stolen property. *See Winters v. Board of County Commissioners, Osage County,* 4 F.3d 848 (10th Cir.1993).

6. The Court in *Horton* stated,

It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the

zure of an item whose identity is already known occasions no further invasion of privacy." *Minnesota v. Dickerson*, —— U.S. ——, ——, 113 S.Ct. 2130, 2138, 124 L.Ed.2d 334 (1993). Based upon the undisputed facts, there is no question that Walker and Austin had the right to look at the trailer from outside the gates of Hopson's compound and then obtained the right to enter the compound.

■■■ The main problem facing the deputies was what they needed to do to impound the trailer. At the time of the seizure, defendants Winkler and Austin were faced with confusion over the true ownership of the trailer, since both Smith and Followwill claimed an interest in it. In addition, county policy required that the deputies respond in a situation in which a stolen property report had been filed. It is important to note that Austin and Winkler did not give possession of the trailer to either of the two men. Rather than act as on-the-spot arbitrators, Austin and Winkler impounded the vehicle so that both sides would have equal opportunity to air their claims in a legal proceeding. Although plaintiff makes the conclusory assertion that the officers must have known of his right to possess the trailer, an evaluation of the reasonableness of the officers' actions must be based on the facts known to them at that time.

■■■ The central inquiry here is whether Winkler and Austin knew they were violating Smith's Fourth Amendment rights and whether their understanding was objectively reasonable. Given the confusion over the ownership of the trailer, Winkler and Austin acted reasonably in impounding the vehicle. In such a circumstance, it was not clear that

plaintiff owned the trailer and that Austin and Winkler should have known his Fourth Amendment rights were implicated. Rather, defendants took the logical step of impounding the vehicle in anticipation of further legal action. Such acts of discretion do not fall outside the bounds of acceptable police conduct. Defendants' acts fall well within the requirements of Oklahoma state law regarding the disposition of stolen property. Particularly in cases where ownership is in dispute, the proper procedure, by statute, is to hold stolen property pending proper adjudication by a magistrate. *See* Okla.Stat.Ann. tit. 22, § 1321 (West 1993).

Plaintiff's reliance on *Wolfenbarger* and *Soldal* to support his claim is mistaken. In both cases, the courts found that law enforcement officers should have known of the plaintiffs' property interests; thus, there was no question that Fourth Amendment rights had been implicated by the seizures.[7] No such clarity exists in the facts of this case. Given the conflicting claims of ownership, Walker and Austin could not reasonably determine whose Fourth Amendment rights were implicated by seizing the trailer. For example, if a warrant were to have been issued, who would it have been served on? What constitutional principle was violated by obtaining Hopson's consent allowing the deputies to gain access to reported stolen property in which Hopson himself had no interest? Indeed, the "clearly established" law that would reasonably have been known to the defendants was Okla.Stat. tit. 22, § 1321, which provided for impound and judicial resolution of cases where ownership of stolen property is in dispute. The undisputed evidence demonstrates that this was what Austin and Winkler sought to do with the trailer.

warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be "immediately apparent." ... Second, no only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself. *Id.* 496 U.S. at 136–37, 110 S.Ct. at 2308 (citations omitted).

7. In *Wolfenbarger*, the U.S. Court of Appeals for the Tenth Circuit determined that Oklahoma cases and statutes "clearly established that pawnbrokers and other good faith purchasers of stolen

goods [had] substantive and procedural rights in such property." *Wolfenbarger*, 826 F.2d at 934. This conclusion resolved the issue whether the plaintiff's Fourth Amendment rights were at issue at the time of the seizure.

In *Soldal*, the subject of the seizure was the plaintiff's own trailer home; therefore, possession of the trailer by the plaintiff was not in dispute. The Supreme Court went on, however, to hold that the Fourth Amendment protected "possessory interests," particularly if those interests were clear at the time of the seizure. *See Soldal*, —— U.S. at ——, 113 S.Ct. at 548.

In the end, even if the deputies were mistaken in their confusion and a violation of plaintiff's rights did occur, Walker and Austin still acted reasonably, given the nature of the circumstances.[8] *See Hunter,* — U.S. at ——, 112 S.Ct. at 537 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' ") (quoting *Malley,* 475 U.S. at 341, 343, 106 S.Ct. at 1096, 1097). Had Austin and Winkler blithely decided to let Followwill take the trailer, we would have a different situation; however, this is not the case at hand. Because Smith has not "clearly established" that defendants should have known that they were violating his Fourth Amendment rights against search and seizure nor could it fairly be concluded from the facts that the deputies acted in disregard of his rights, defendants Winkler and Austin are entitled to qualified immunity on both issues of their entry onto the lot and the seizure of the trailer.

## B. Sheriff Walsh and the Cleveland County Board of Commissioners

Smith argues that defendant Walsh in his capacity as sheriff of Cleveland County, along with the Cleveland County Board of Commissioners, should be held liable for the seizure of the trailer. Plaintiff asserts that the seizure "was made under color of law and pursuant to the policies, customs and usages of the Sheriff of Cleveland County." Response to Motion for Summary Judgment of John Walsh, et al, at 3. "[M]unicipalities and their supervisory personnel are not liable for civil rights violations caused by individual police officers employed by the municipalities unless the plaintiff demonstrates '[a]n affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy—express or otherwise—showing their authorization or approval of such misconduct.' " *D.T. v. Independent School Dist. No. 16 of Pawnee County, Okla.,* 894 F.2d 1176, 1187 (10th Cir.1990) (quoting *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)), *cert. denied,* 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990). Thus, there can only be liability if the plaintiff demonstrates a "direct causal link between municipal policy or custom, and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

In order to support his claim, Smith does little more than assert that the actions of Austin and Winkler in seizing the trailer were pursuant to official policy. Plaintiff's assertion rests on the basis of Austin's and Winkler's references to the practice of using the NCIC to confirm theft reports and seize stolen property, and the purported unconstitutionality of this.

The use of computer-generated information to support police action is not problematic in and of itself. *See Smith v. City of Oklahoma City,* 696 F.2d 784 (10th Cir.1983) (upholding the use of computer verification by police officials as long as the hearsay evidence relied upon has a sufficient indicia of reliability).[9] The use of computer information can enhance the reliability of law enforcement. *See Howard v. Regional Transit Authority,* 667 F.Supp. 540 (N.D.Ohio 1987) ("In this age of computers

---

8. The subsequent court proceedings in McClain County Small Claims Court do not decide this issue. Whether or not plaintiff was awarded title and possession of the trailer in a later proceeding does not answer the inquiry into whether it was reasonable for the officers to be in doubt as to who owned the vehicle at the time they impounded the trailer. It is of interest that Judge Tipton did not award the trailer to Mr. Smith outright, but encumbered it in favor of Mr. Followwill. Even in this civil litigation, the issue of outright ownership was not clear-cut.

9. In *Smith,* the Tenth Circuit held that the use of computer checks to verify vehicle ownership violated the Fourth Amendment because it failed to

provide probable cause to arrest owners for parking offenses. However, the key to the court's ruling is in the nature of the computer information involved. Because vehicle tags stayed with automobiles after a transfer in ownership, the court found computer verification did not conclusively establish who owned the vehicles when the parking citations were issued and, therefore, was not reliable enough to form the basis of a probable cause determination. 696 F.2d at 787. However, plaintiff has not raised the claim that the NCIC information was unreliable in the instant case and the Court is presented with no evidence that indicates that it would be.

and immediate access to information, a governmental body has a duty to provide all the information it has to law enforcement officers to enable them to carry out their functions lawfully.") Of course, the use of computer-generated information does not excuse law enforcement officials from observing constitutional and statutory requirements. However, plaintiff has failed to demonstrate, with specific evidence, that the policy of the Cleveland County Sheriff's Office in seizing stolen property infringes upon established constitutional rights. Nor does the plaintiff show any direct causal link between the policy of the Sheriff's Office and his alleged constitutional violations beyond the fact that the officers used the NCIC to verify the stolen property report and used that information in making their decisions. Such assertions are insufficient to maintain an action against Sheriff Walsh or the Cleveland County Board of Commissioners.[10]

### C. Followwill and John's Trucking

 Plaintiff's final claim is that defendant Followwill should be held liable for violations of his constitutional rights as a state actor under § 1983. In order for a private actor to be held liable under § 1983, there must be a close nexus between the private action and the state. The two-pronged test set forth in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), requires that "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible [and, s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937, 102 S.Ct. at 2753–54. "If private persons are charged they must be jointly engaged with state officials in prohibited action to become state actors under color of law." *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429 (10th Cir.1984), *vacated on other grounds*, 474 U.S. 805, 106 S.Ct. 40, 88

L.Ed.2d 33 (1985). Private parties who report suspected criminal activity to law enforcement officials exercising independent judgment are not held liable under § 1983. *See Carey v. Continental Airlines, Inc.*, 823 F.2d 1402 (10th Cir.1987); *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112 (10th Cir. 1987). This is so regardless of how insistent a private complainant may be. *See Lee*, 820 F.2d at 1115.

Plaintiff strenuously attempts to insinuate that something insidious was being hatched between Followwill and Deputy Sheriffs Winkler and Austin. Nevertheless, plaintiff offers nothing but conclusory assertions to support his claim. The fact that Followwill filed a complaint with the McClain County Sheriff's office, contacted the Cleveland County Sheriff's Office about the trailer and was present when the deputies were investigating his claim does not indicate that he was acting in concert with a state actor. Rather, Followwill merely took advantage of the process he was entitled to use in reporting any possible crime.

In addition, plaintiff's attempt to link the conduct of Austin and Walker with Followwill is contradicted by the deputies' very own actions. Clearly, the decision by Austin and Winkler to impound the trailer, rather than give it to one of the contesting parties, indicates that they were not acting exclusively on Followwill's behalf. Rather, it indicates the exact opposite: that the deputies were exercising their own independent judgment in resolving the matter. In the end, plaintiff offers little in the way of concrete evidence to support his claim of collusion between Followwill and the deputies. As such, his § 1983 claim against Followwill cannot stand.

 Plaintiff has also raised two state law tort claims: slander and abuse of process. Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise jurisdiction over state claims if "the district court

---

10. The Court also dismisses without prejudice, pursuant to 28 U.S.C. § 1367(c), plaintiff's state claims against Sheriff Walsh under the Oklahoma Governmental Tort Claims Act and under the common law theory of *respondeat superior*. *See* 28 U.S.C. § 1367(c) (1990) (giving district court judge discretion to dismiss state claims

once all federal claims against a party have been dismissed). It also bears noting that claims of *respondeat superior* cannot be maintained against municipalities under § 1983. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3) (1990). *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Given this Court's judgment regarding Smith's federal claim against Followwill, this Court declines to entertain plaintiff's state causes of action.[11]

### CONCLUSION

The Motion For Summary Judgment of Defendants, John Walsh, Sheriff Of Cleveland County, Cliff Winkler, Kevin Austin And The Board Of County Commissioners Of Cleveland County, Oklahoma and Defendants', Michael J. Followwill and John's Trucking, Inc., Motion For Summary Judgment are GRANTED with respect to all claims.

It is so ordered.

---

11. Summary judgment is also granted on all claims with respect to John's Trucking. The presence of John's Trucking in this action is perplexing to the Court, since all the allegations regarding unconstitutional activity relate to Followwill. Plaintiff attempts to link his state law claims against John's Trucking with Followwill based upon a supposed *alter ego* theory. Plaintiff presents no evidence to support such a theory and the Court declines to assist them in that endeavor. Moreover, for the aforementioned reasons, all such claims would be dismissed as to Followwill; thus, the issue is moot.